# Exhibit 2

FILED

January 11, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ JU

DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **VIRGINIA NAVARRO,** | § | |
| **Individually and on behalf of all others** | § | **CIVIL NO. SA-20-CV-00766-OLG** |
| **similarly situated** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **COLLECTIVE ACTION** |
| **v.** | § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| | § | |
| **MARRIOTT INTERNATIONAL, INC.,** | § | **CLASS ACTION** |
| | § | **PURSUANT TO FED. R. CIV. P.** |
| **Defendant.** | § | **23(b)** |

**JUDGMENT**

WHEREAS, Plaintiff Virginia Navarro ("Plaintiff"), individually and as Class Representative on behalf of the Class/Collective Members, and Defendant Marriott International, Inc. entered into the Confidential Settlement Agreement and Release and the First Addendum to Confidential Settlement Agreement and Release (together, the "Agreement").

WHEREAS, on August 22, 2022, the Court entered an Order that, among other things, (a) found that the class and collective action settlement memorialized in the Agreement fell withing the range of reasonableness and preliminarily approved its terms; (b) preliminarily certified, pursuant to Federal Rule of Civil Procedure 23, a class action for the purposes of settlement only; (c) conditionally certified, pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), a collective action for the purposes of settlement only; (d) conditionally certified, pursuant to Ohio Revised Code § 4111.10(C), a collective action for settlement purposes only; (e) approved the form of notice to Class/Collective Members, and the method of dissemination thereof; (f) directed that appropriate notice of the settlement be given to the Class/Collective Members; and (e) set a hearing date for the settlement fairness hearing. Dkt. No. 34.

WHEREAS, the notice to the Class/Collective Members ordered by the Court in its Order has been provided, as attested to in the Declaration of Amanda Myette, filed with the Court with the Plaintiff's Unopposed Motion for Final Approval of Confidential Settlement Agreement and Release. *See* Dkt. No. 39.

WHEREAS, on January 11, 2023, a hearing was held on whether the settlement set forth in the Agreement was fair, reasonable, adequate, and in the best interests of the Class/Collective Members, such a hearing date being a due and appropriate number of days after such notice to the Class/Collective Members;

NOW THEREFORE, having reviewed and considered the submissions presented with respect to the settlement set forth in the Agreement and the record in these proceedings, having heard and considered the evidence presented by the parties and the argument of counsel, having determined that the settlement set forth in the Agreement is fair, reasonable, adequate, and in the best interests of the Class/Collective Members, and noting that, as set forth in the Agreement, and good cause appearing therefore orders as follows,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED:

1.      The Court incorporates by reference the definitions set forth in the Agreement. This Court finds that the Class Representative fairly and adequately represents the Class/Collective Members.

2.      This Court has personal jurisdiction over the Class Representative and the Class/Collective Members, and has subject matter jurisdiction over all claims asserted in the First Amended Class/Collective Action Complaint. In addition, venue in the Western District of Texas is proper.

3.      The Agreement is approved as fair, reasonable, and adequate, consistent and in compliance with the applicable provisions of the United States Constitution, the FLSA, the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), and the Federal Rules of Civil Procedure, and in the best interest of the Settlement Participants. The Agreement is binding on and will have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Agreement maintained either by or on behalf of the Class Representative and all other Settlement Participants, as well as their past, current, and future heirs, representatives, executors, administrators, attorneys, predecessors, successors, and assigns.

4.      The Notice of Settlement provided pursuant to the Agreement and the Order granting preliminary approval of the Agreement:

(a) Constituted the best practicable notice, under the circumstances;

(b) Constituted notice that was reasonably calculated to apprise the Class/Collective Members of the pendency of this lawsuit, their right to object or exclude themselves from the proposed settlement, and to appear at the Final Approval Hearing;

(c) Was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and

(d) Met all applicable requirements of the Federal Rules of Civil Procedure, the FLSA, the OMFWSA, and the Due Process Clause of the United States Constitution because it stated in plain, easily understood language the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member

who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).

5.    For settlement purposes only, that the requirements for class and collective certification under 29 U.S.C. § 216(b), Ohio Revised Code § 4111.10(C), and Federal Rule of Civil Procedure 23(a) and (b)(3) are satisfied.

6.    The Agreement in this action warrants final approval pursuant to the FLSA, the OMFWSA, and Rule 23(e) of the Federal Rules of Civil Procedure because it is fair, adequate, and reasonable to those it affects, and resulted from vigorously contested litigation, including meaningful discovery, motion practice, and extensive good-faith arm's length negotiations between the parties. Accordingly, this Court APPROVES the Agreement.

7.    The Agreement is fair, reasonable, and adequate considering the following factors:

(1) whether the settlement was a product of fraud or collusion;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the factual and legal obstacles prevailing on the merits;
(5) the possible range of recovery and the certainty of damages; and
(6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

8.    Class Counsel and the Class Representative adequately represented the Class/Collective Members for purposes of entering into and implementing the settlement.

9.    The Confidential Settlement Agreement and General Release between the previously named plaintiff, Rain Garcia (f/k/a Micheal Garcia), and Defendant ("Garcia Individual Settlement Agreement"), attached as Exhibit A to the Agreement, is hereby approved as it provides for the fair, reasonable, and adequate resolution of a bona fide dispute. The Garcia Individual Settlement Agreement will have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Garcia Individual Settlement Agreement.

10.     The Confidential Settlement Agreement and General Release between Representative Plaintiff Virginia Navarro and Defendant ("Navarro Individual Settlement Agreement"), attached as Exhibit B to the Agreement, is hereby approved as it provides for the fair, reasonable, and adequate resolution of a bona fide dispute. The Navarro Individual Settlement Agreement will have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Navarro Individual Settlement Agreement.

11.     Class Counsel's requested fees and expenses of $300,000.00, and as set out in their Motion for Fees and Costs (Dkt. No. 37), are fair and were reasonably and necessarily incurred.

12.     The Service Award of $5,000 to Plaintiff and the Separate Award of $5,000 to Garcia (as set forth in the Agreement, to compensate the Class Representative and Rain Garcia for their unique services in initiating and/or maintaining this litigation), are reasonable and are approved.

13.     Rust Consulting, Inc.'s expenses for administering the Settlement, including the distribution of Notice and the settlement funds, are reasonable and are approved.

14.     Nothing relating to this Order, or any communications, papers, or orders related to the Agreement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendant or the Released Parties of any liability, culpability, negligence, or wrongdoing toward the Class Representative, Garcia, any of the Class/Collective Members, or any other person, or that class or collective action certification is appropriate in this or any other matter. There has been no determination by any Court as to the merits of the claims asserted by the Class Representative against Defendant or as to whether a class or collective should be certified, other than for settlement purposes only. Furthermore, nothing in the Parties' Agreement shall be cited to as,

construed to be, admissible as, or considered any form of waiver of any alternative dispute resolution agreements, provisions, or policies by Defendants or the Released Parties.

15.     In consideration of the consideration paid under the Agreement, and for other good and valuable consideration, each of the Settlement Participants shall, by operation of this Judgment, have fully, finally, and forever released, relinquished, and discharged all Released Claims against Defendant and all Released Parties in accordance with the terms of the Agreement.

16.     In the event that the Effective Date does not occur, this Judgment shall be rendered null and void and shall be vacated, nunc pro tunc, and without prejudice to the status quo ante rights of Plaintiff, Settlement Participants and Defendant.

17.     This Court, on August 22, 2022, approved the class/collective settlement as memorialized in the Agreement. This Court APPROVES the collective settlement and amendments as they relate to the settlement of a collection action pursuant to 29 U.S.C. § 216(b).

18.     All Settlement Participants and/or their representatives who have not been excluded from the settlement by submitting a timely Opt-Out Request are permanently barred and enjoined from bringing, filing, commencing, prosecuting, maintaining, intervening in, participating in (as class/collective members or otherwise), or receiving any benefits from any other lawsuit (including putative class/collective action lawsuits), arbitration, administrative, regulatory, or other proceeding, order, or cause of action in law or equity in any jurisdiction that encompasses or are duplicative of the Released State and Local Law Claims.

19.     All Settlement Participants and/or their representatives who timely negotiate their Individual Settlement Payment are permanently barred and enjoined from bringing, filing, commencing, prosecuting, maintaining, intervening in, participating in (as class/collective members or otherwise), or receiving any benefits from any other lawsuit (including putative

class/collective action lawsuits), arbitration, administrative, regulatory, or other proceeding, order, or cause of action in law or equity in any jurisdiction that encompasses or are duplicative of the Released Federal Claims.

20.     This lawsuit is dismissed on the merits and with prejudice, without fees or costs to any party, except as provided above and/or in the Agreement.

It is so **ORDERED**.

**SIGNED** this ___11th___ day of January, 2023.

_____
ORLANDO L. GARCIA
United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **VIRGINIA NAVARRO,** | § | **Civil Action No. 5:20-cv-00766-OLG** |
| **Individually and on behalf of all others** | § | |
| **similarly situated** | § | |
| | § | |
| *Plaintiff,* | § | **COLLECTIVE ACTION** |
| | § | **PURSUANT TO 29 U.S.C. §216(b)** |
| | § | |
| **v.** | § | |
| | § | |
| **MARRIOTT INTERNATIONAL, INC.** | § | **CLASS ACTION PURSUANT** |
| | § | **TO FED. R. CIV. P. 23(b)(3)** |
| *Defendant.* | § | |

## PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEY FEES AND COSTS

**TO CHIEF JUDGE ORLANDO L. GARCIA:**

Virginia Navarro, individually and as Representative of the Settlement Class/Collective ("Class Representative" or "Plaintiff"), asks the Court to approve the negotiated award of attorneys' fees and costs included in the Settlement Agreement between the parties pursuant to Federal Rule of Civil Procedure 23(h) and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

## I.
## SUMMARY OF ARGUMENT

Plaintiff seeks to recover her attorneys' fees and costs pursuant to the common benefit doctrine and through § 16(b) of the FLSA. By and through Class/Collective Counsel ANDERSON ALEXANDER, PLLC, the Plaintiff tactically and efficiently litigated this matter from its inception. Based on their legal acumen, Class/Collective Counsel positioned the litigation for early, company-wide resolution that confers significant financial value to the Settlement Class/Collective. Class/Collective Counsel will show that the requested amount for attorneys' fees and costs is reasonable under the percentage of the fund utilized by this Court and the benchmark percentage of forty percent (40%) is

not only appropriate, but is justified by the relevant *Johnson* factors, and is reasonable after engaging in a Lodestar cross-check.

## II.
## PROCEDURAL HISTORY

This is a hybrid collective and class action lawsuit for unpaid overtime wages brought by Plaintiff on behalf of herself and all other similarly situated current and former hourly, non-exempt Call Center Agents who have worked at one of Marriott's U.S. Customer Engagement Centers ("CEC") during the applicable Covered FLSA Period and Covered State Law Period (collectively, along with Plaintiff and all Current Opt-Ins, the "Class/Collective Members") who Plaintiff claims, were not properly compensated for all of the hours they worked. Plaintiff alleged claims under the FLSA, 29 U.S.C. §§ 201 *et seq.*, to recover unpaid overtime compensation and statutorily prescribed penalties. In addition to her claims under the FLSA, Plaintiff further alleged state-law claims pursuant to the laws of Florida, Kansas, Massachusetts, Nebraska, Ohio, Texas, and Utah as class and collective actions.

On July 1, 2020, Rain Garcia ("Garcia") commenced this Action against Defendant, seeking all available relief under the FLSA, 29 U.S.C. §§ 201, *et seq.*, and applicable Texas state common law. *See* ECF No. 1. On July 27, 2020, Marriott filed its Answer, disclaiming liability and asserting a number of affirmative defenses. *See* ECF No. 13. Since Plaintiff filed the Original Collective/Class Action Complaint, twenty-eight (28) individuals have filed their Opt-In Consent Forms to become party plaintiffs in this action (the "Current Opt-Ins").

The Parties conferred as required by Federal Rule of Civil Procedure 26 and submitted their joint proposed scheduling order to this Court. *See* ECF No. 21. This Court subsequently entered a scheduling order and set the applicable deadlines as they applied to this matter. *See* ECF No. 22. Included in those deadlines was a court-ordered requirement to begin Alternative Dispute Resolution ("ADR") discussions promptly. *See id.* ¶¶ 1–2. Plaintiff prepared a motion for conditional certification

of an FLSA collective that requested the ability to send court-ordered notice to the Putative Collective Members, but held the filing of that motion back—in the interest of pursuing settlement discussions in good faith.

As part of those discussions, the Parties entertained the possibility of early resolution on a class and collective wide basis. Defendant agreed to produce data relevant to the Putative Class Members, informally, to allow Class/Collective Counsel the opportunity to fully evaluate the claims and available damages for the class and collective. The Parties also sought, and obtained, a stay of the Action to permit them to participate in formal mediation. *See* ECF No. 27. The Parties attended a virtual formal mediation with respected wage and hour mediator, Carole Katz, on June 23, 2021. The Parties settled the matter, in principle, during the mediation and subsequently executed a Memorandum of Understanding ("MOU") further memorializing their agreement until the formal settlement agreement could be drafted and executed. After extensive collaboration, and on March 15, 2022, the Parties fully executed the Agreement.

## III.
## ARGUMENT & AUTHORITIES

"[W]hen a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained." *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). The common benefit doctrine provides an exception to the "American Rule," permitting the creation of a common fund for the purpose of paying reasonable attorneys' fees. *See* Eldon E. Fallon, COMMON BENEFIT FEES IN MULTIDISTRICT LITIGATION, 74 La. L. Rev. 371, 374–75 (2014). The common benefit doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins*, 300 F.R.D. at 306 (quoting *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D.Ill.1989) (citation omitted)). It stems from the premise that "those

who receive the benefit of a lawsuit without contributing to its costs are 'unjustly enriched' at the expense of the successful litigant." *Id.* (quoting *Van Gemert*, 444 U.S. at 478). Accordingly, the Supreme Court (and the Fifth Circuit) recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* at 306–07 (quoting *Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981). As such, the common benefit doctrine is applied in the class action context "to compensate attorneys whose work benefits others similarly situated." *See id.* Fallon, *supra* p. 3 at 375 (recognizing that "[i]n class actions the beneficiary of the common benefit work is the claimant").

Courts also have recognized that common fund recoveries based on contingency fee representation are especially beneficial to employee plaintiffs who may not possess the financial resources to hire counsel on an hourly basis to pursue their claims:

> Common fund recoveries are contingent on a successful litigation outcome. Such contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk. Many individual litigants, including the class members here, cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation.

*Capsolas v. Pasta Res. Inc.*, No. 10-cv-5595, 2012 WL 4760910, *8 (S.D.N.Y. Oct. 5, 2012) (internal citation and quotation omitted); *see also* 2019 EMPLOYEE BENEFITS CAS. (BNA) 97998 (4th Cir. 2019) (recognizing that employee that benefits from a lawsuit without contributing to its costs, would be unjustly enriched at the successful litigant's or lawyer's expense).

In common fund cases such as this one, district courts typically use one of two methods for calculating attorneys' fees:

> (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier.

*Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 WL 4419472, at *13 (W.D. Tex. May 24, 2016), *report and recommendation adopted*, No. SA-14-CA-912-FB, 2016 WL 4411551 (W.D. Tex. June 17, 2016) (quoting *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012) (joining the majority of circuits in allowing district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by the *Johnson* considerations)).

Here, Class Counsel ask this Court to apply the percentage fee method and award 40% of the Maximum Settlement Amount as attorneys' fees.

## A.   THE "PERCENTAGE OF THE FUND" METHOD IS THE APPROPRIATE METHOD FOR DETERMINING COMMON BENEFIT FEES

Rule 23 requires that district courts presiding over a class action "must scrutinize the attorneys' fees of class counsel to assure that they are reasonable." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d 456, 497 (E.D. La. 2020). "Most courts use the percentage of the fund method in awarding fees in common fund class actions." *Di Giacomo v. Plains All Am. Pipeline*, No. CIV.A.H-99-4137, 2001 WL 34633373, at *5 (S.D. Tex. Dec. 19, 2001) (citing *Camden I Condominium Assoc., Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir.1991)("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) (holding that in common fund class actions, percentage of the fund method is the only permissible method of award of attorney fees)). The Supreme Court has long recognized that the percentage fee method is a proper method of calculating attorney fees in a common fund case. *See id.* (citing *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984); *Boeing Co. v. Van Gemert*, 444 U.S. at 478 ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.")).

Prominent judges and practitioners explained why attorney fee awards in common fund cases should be based on the percentage fee method in a 1985 Third Circuit Task Force Report. *Di Giacomo v. Plains All Am. Pipeline*, No. CIV.A.H-99-4137, 2001 WL 34633373, at *6 (S.D. Tex. Dec. 19, 2001). The Report identified a number of deficiencies with the lodestar method, including:

> (1) increasing the workload of the judicial system; (2) lack of objectivity; (3) a sense of mathematical precision unwarranted in terms of the realities of the practice of law; (4) ease of manipulation by judges who prefer to calculate the fees in terms of percentages of the settlement fund; (5) encouraging duplicative and unjustified work; (6) discouraging early settlement; (7) not providing judges with enough flexibility to award or deter lawyers so that desirable objectives, such as early settlement, will be fostered; (8) providing relatively less monetary reward to the public interest bar; and (9) confusion and unpredictability in administration.

*Id.* (citing Task Force Report, 108 F.R.D. 237, 246–49 (1986)). In 2001, a subsequent Third Circuit Task Force issued a draft report again concluding that attorney fee awards in common fund cases should be based on the percentage of fund, rather than lodestar, approach. *Id.* Despite the apparent advantages of the percentage fee method over the lodestar method in common fund cases, the law in the Fifth Circuit is not clear in which method is approved. *In re Combustion, Inc.*, 968 F. Supp. 1116, 1135 (W.D. La. 1997).

That said, district courts in the Fifth Circuit have applied a hybrid approach, "using some combination of a percentage and a 'lodestar check.'" *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 751 (S.D. Tex. 2008) (quoting *In re Educ. Testing Serv. Praxis Principles of Learning and Teaching: Grades 7–12 Litig.*, 447 F.Supp.2d 612, 629 (E.D. La. 2006) ("Under Fifth Circuit law, the Court has the flexibility to calculate fees based on the percentage method as long as it combines its determination with some analysis under the lodestar method.").

"A cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in the lodestar multiplier." *Id.* (quoting *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006)). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (quoting *In re Global Crossing Sec.*

*& ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004)). The "multiplier need not fall within any predefined range as long as the district court justifies the award." *Id.*

> The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award. Even when the lodestar method is used only as a cross-check, courts must take care to explain how the application of a multiplier is justified by the facts of a particular case.

*Id.* (quoting *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998)).

## B. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

### 1. Valuation of Benefit to the Class and Determination of Benchmark Percentage

Collective/Class Counsel have negotiated settlement terms immensely favorable to the Collective/Class Members. Collective/Class Counsel secured a Maximum Settlement Amount of $750,000.00, of which the remaining Net Settlement Amount will be divided among the Participating Settlement Class and Collective Members. Of that, Class/Collective Counsel seek 40% (or $300,000.00) of the Maximum Settlement Amount for their attorneys' fees *and* their reasonably incurred litigation expenses.

"No general rule can be articulated on what is a reasonable percentage of a common fund." *Jenkins*, 300 F.R.D. at 307 (quoting *Bethea v. Sprint Commc'ns Co. L.*P., No. 3:12-CV-322-CWR-FKB, 2013 WL 228094, at *3 (S.D. Miss. Jan. 18, 2013)). Nonetheless, it is typical for fee awards to fall between a lower end of 20% and an upper end of 50%. *See id.* Fifty percent "is the upper limit on a reasonable fee award to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented." *Torregano v. Sader Power, LLC*, No. CV 14-293, 2019 WL 969822, at *3 (E.D. La. Feb. 28, 2019) (quoting *Combustion, Inc.*, 968 F. Supp. at 1133 (citing *Camden I Condominium Assn. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)); *see also Wolfe v. Anchor Drilling Fluids USA Inc.*, Cause No. 4:14-cv-1344, 2015 WL 12778393 (S.D. Tex.

Dec. 7, 2015) (approving an award of 40% of the common fund). "Further, cases in which courts have found considerably lower percentage awards appropriate tend to be 'mega cases,' with common funds exceeding $100 million." *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 791 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010). Here, the requested percentage of 40% is within percentages awarded in class actions in the Fifth Circuit. The requested percentage is therefore reasonable and appropriate for this case. The Collective/Class Members are receiving a ***significant*** value for their claims.

### 2. The *Johnson* Factors Reinforce the Benchmark Percentage

After determining the appropriate benchmark percentage, district courts apply the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, to determine whether an adjustment to the benchmark is warranted. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d at 500. The *Johnson* factors include

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 497.

### a. Time and Labor Required

Collective/Class Counsel logged approximately 266 hours of work litigating this hybrid class/collective action from its inception through the present. *See* Declaration of Clif Alexander, attached as Exhibit 1.. Litigating complex wage and hour cases like this one involve fact intensive issues that require a large time investment, in addition to skill and experience. *See Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 4867226, at *5 (D. Kan. Oct. 15, 2012) (recognizing that collective actions require an extensive time commitment, skill, and expertise by experienced plaintiffs' counsel).

As previously discussed, Collective/Class Counsel skillfully maneuvered this litigation from the outset to place it in a position for global resolution. That included frank conversations with Defendant's Counsel about the issues faced by both Parties and intensive client communication that allowed Collective/Class Counsel to prepare a robust motion for conditional certification shortly after the lawsuit was filed and utilize the drafted motion to facilitate global resolution.

### b. Novelty and Difficulty of Question Presented by the Case

This hybrid collective/class action is premised on Defendant's alleged violations of the FLSA and separate state law claims. While the FLSA claims (and now Ohio claims) are pursued collectively and Class Representative brought the state law claims as a Rule 23 class action. While wage and hour litigation is inherently complex, it is made more so in the hybrid context involved here as it involves navigating the complex interplay between federal and state law, both procedurally and on the merits of the claims at issue.

Not only were there complex questions of law raised by this litigation, there were numerous contested issues that would have been tried to the fact finder:

- Whether Plaintiff can show that she, and the Putative Collective/Class Members can proceed to trial on a collective/class basis;

- Whether each Plaintiff can show that Defendant had a national policy or practice that violated the FLSA;[1]

- Whether each Plaintiff can show that Defendant's national policy or practice was applied to him/her and deprived him/her of wages owed under the FLSA;

- Whether each Plaintiff was paid for all overtime hours worked during the relevant time period;

- Whether each Plaintiff is entitled to recover for two or three years of wages, which requires a determination as to whether the violation was willful, or, more specifically:

---

[1] *See Aguirre v. SBC Commc'ns., Inc.*, No. 05-3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006).

- o Whether Defendant knew or showed reckless disregard as whether its conduct was prohibited by the FLSA; and

- o Whether Defendant negligently violated the FLSA;

- Whether each Plaintiff is entitled to recover liquidated damages and penalties, which requires proof that objectively reasonable grounds existed for Defendant to believe itself in compliance with the FLSA.

This case involved complex questions of law and multiple fact questions upon which significant discovery would have been required. This factor favors approval of the requested percentage.

### c. Skill Required and Ability of Collective/Class Counsel

Collective/Class Counsel is well-versed in complex individual, collective and class actions in the employment law context. *See generally* Exhibit A. Collective/Class Counsel thereby had the requisite reputation, skill, and specialized experience to perform the legal services required in this complex litigation. Collective/Class Counsel has litigated over 500 wage and hour cases proceeding in judicial and arbitral forums across the United States. *See id.* This focus on wage and hour litigation allows Collective/Class Counsel to provide superior legal representation to their clients, including Plaintiffs and the Settlement Class Members herein.

Clif Alexander took a lead role in this litigation. Mr. Alexander focuses his practice on representing wage and hour clients throughout the United States—he has been lead counsel in more than 500 individual, collective, and class action wage and hour cases across the United States and has extensive experience litigating mass actions against corporate defendants. Indeed, Mr. Alexander has dedicated his career to handling complex class, collective, and mass action litigation on behalf of Plaintiffs in many types of cases, and has worked almost exclusively in the labor and employment context for over ten years. *See id.* Mr. Alexander is a zealous advocate for his clients and a dedicated lawyer. Plaintiffs in this matter were served by an experienced litigation team composed of skilled and experienced wage and hour attorneys. They, and the services they provided to the class are addressed in greater detail in Mr. Alexander's declaration. *See* Exhibit A.

Moreover, Collective/Class Counsel's skill and experience in litigating wage and hour class and collective actions has been previously recognized. *See Bass v. Berry Bros. General Contractors, Inc.*, Civ. A. No. 17-0947, ECF No. 40, p.8 (W.D. La. Apr. 1, 2020) ("Class counsel's skill, knowledge, reputation, and experience is well-recognized in FLSA cases such as this.") (attached as Exhibit 2). Litigating this type of complex representative action is the focus of Collective/Class Counsel's practice, and they have both the skill and experience to successfully try these matters to resolution.

> **d.** **Preclusion of Other Employment by the Attorneys due to Acceptance of the Case**

Collective/Class Counsel undertook significant risk in agreeing to represent Plaintiffs in this case. Wage and hour cases are complicated and time-consuming matters. Any attorney undertaking these types of cases must be prepared to make tremendous investments of time, energy, and financial resources in order to appropriately pursue them. Collective/Class Counsel is comprised of attorneys from a boutique firm who are limited by time and cannot pursue every wage and hour claim. Instead, they must necessarily choose which clients they will be able to represent, considering the time and expense inherent in every case. This factor weighs in favor of approval. *See Claudet*, 2020 WL 3128611, at *12.

> **e.** **The Undesirability of the Case**

Likewise, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Jenkins,* 300 F.R.D at 309 (quoting *Skelton v. Gen'l Motors Corp.*, 860 F.2d 250, 258 (7th Cir.1988), cert. denied, 493 U.S. 810 (1989). "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit—not retroactively, with the benefit of hindsight. *Id.* (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir.1976)). Collective/Class Counsel confronted all procedural and substantive issues presented without any

assurances as to how the Court would rule when they accepted the case and the risks that accompanied it.

### f.    Customary Fee Awards in Similar Cases

Plaintiffs' requested fee award is on par with other fee awards in similar related cases, as addressed above in setting the benchmark percentage. *See supra* § IV.B.1

### g.    Plaintiffs' Contingency Fee Agreement

Collective/Class Counsel prosecuted this entirely on a contingent fee basis. *See* Exhibit 1. In undertaking to prosecute this complex class/collective action on that basis, Collective/Class Counsel assumed a significant risk of nonpayment or underpayment. *See id.*

"Recognizing the contingent risk of nonpayment in [class action] cases, courts have found that class counsel ought to be compensated . . . for risk of loss or nonpayment assumed by carrying through with the case." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 859–60 (E.D. La. 2007) (citing *In re Combustion, Inc.*, 968 F. Supp. at 1132); *see also King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 618 (W.D. Tex. 2010) (finding the fact that "[c]lass counsel undertook [the] case on a contingency fee basis" relevant to the *Johnson* analysis). "Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee." *Jenkins*, 300 F.R.D. at 310.

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer . . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 546 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir.1990)).

The risks taken by Collective/Class Counsel in taking this case have already been discussed. It is uncontroverted that the attorney time spent on this case was time that could not be spent on other matters. *See* Exhibit 1. Consequently, this factor supports the requested fee.

### h. Amount Involved and Results Obtained

The negotiated settlement amount provides for a significant recovery to the Class/Collective Members and provides for a cash award now, instead of an uncertain claim recoverable only at an uncertain future date. Although not a full recovery based on Collective/Class Counsel's damage model, it does provide for a significant portion of the alleged damages—and provides for a recovery far above Defendant's claims that <u>*zero*</u> damages are owed. The prompt results obtained by the settlement, considered together with the amount involved in the litigation, supports the requested fee amount.

### i. Any Time Limitations Imposed by the Client or the Circumstances

The FLSA provides a maximum three-year statute of limitations on claims. *See* 29 U.S.C. § 255(a). The statute of limitations for the FLSA claims of potential opt-in plaintiffs is not tolled by the filing of a lawsuit, but rather by each opt-in plaintiff filing his/her written consent with the court. *See id.* This wasting statute of limitations required Collective/Class Counsel to act promptly and decisively preparing to move to conditionally certify the collective action. The *Johnson* factors support the requested fee award in this matter and no further deviation from the benchmark percentage is warranted.

### 3. Lodestar Cross-Check

"The final step of the blended method is to cross-check the percentage with an abbreviated lodestar analysis." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d at 503 (citing *In re Oil Spill by the Oil Rig Deepwater Horizon, MDL 2179*, 2016 WL 6215974, at *19 (E.D. La. Oct. 25, 2016) (citing *In re Vioxx*, 760 F. Supp. 2d at 659) ("[T]he loadstar cross-check is a streamlined process,

avoiding the detailed analysis that goes into a traditional lodestar examination."); *Claudet*, 2020 WL 3128611, at *13 (same). "The lodestar is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate for the work performed." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d at 503; *Claudet*, 2020 WL 3128611, at *13. Courts look to the "prevailing community standards for attorneys of similar experience in similar cases" in weighing in on the reasonableness of the requested rates. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d at 503; *Claudet*, 2020 WL 3128611, at *13.

In this legal community, the market rates for complex litigation—like collective actions filed pursuant to 29 U.S.C. § 216(b), are in line with Collective/Class Counsel's rates. *See* Exhibit 1. *See also MidCap Media Fin., LLC v. Pathway Data, Inc.*, No. 1-15-CV-00060 AWA, 2018 WL 7890668, at *5–6 (W.D. Tex. Dec. 19, 2018) (awarding rates from $755 to $325 in a breach of contract case). Accordingly, Plaintiffs' counsel's respective hourly rates are reasonable considering the skill and expertise of the attorneys involved, and are additionally supported by awards from multiple courts throughout the United States. *See id.*

Collective/Class Counsel has now expended approximately 266 hours in the litigation of this matter. The time expended by Collective/Class Counsel was in the furtherance of tasks that were both reasonable and necessary for the prosecution (and successful resolution) of Plaintiffs' claims. Collective/Class Counsel has not included time spent researching and drafting motions that were not successful before the Court. Neither has Collective/Class Counsel included time on matters not pertinent to the merits of this lawsuit. *See id.* Collective/Class Counsel also exercised billing judgment and excluded duplicative billing entries. *See id.* Collective/Class Counsel further contends that these hours are justified by the complexity of the case and nature of the work performed, which included extensive (although informal) discovery, correspondence, and settlement negotiations. Applying these rates to the hours billed, the lodestar in this matter, exclusive of fees incurred, is $134,310.00. *See* Ex.

1. Because Collective/Class Counsel's lodestar applies a multiplier of 2.2, it well within the range of multipliers regularly approved in complex litigation. *See Grigson v. Farmers Grp., Inc.*, No. 1:17-CV-00088-LY, 2020 WL 13598801, at *4 (W.D. Tex. May 22, 2020) ("The fee requested represents a multiplier on that figure of approximately 2.20, which is within the range awarded in this Circuit in complex class cases and reasonable in light of the circumstances of the case.); *Sistrunk v. TitleMax, Inc.*, No. 5:14-CV-628-RP, 2018 WL 1773307, at *4 (W.D. Tex. Feb. 22, 2018) (approving a percentage of the common fund that was double the lodestar in a class action context); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 680–81 (N.D. Tex. 2010), as modified (June 14, 2010), judgment entered (June 18, 2010), enforcement denied, No. 7:03-CV-102-D, 2011 WL 2413318 (N.D. Tex. June 15, 2011) (awarding a multiplier of 2.5 in a class action case); *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 751 (E.D. Tex. 2007) (applying a multiplier of 2.26); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 869 (E.D. La. 2007) ("[T]he Court finds that a lodestar multiplier range of 2.5 to 3.5 would be appropriate and reasonable in this case."); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) ("Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.")

This Court has previously noted that "[t]he lodestar analysis is not undertaken to calculate a specific fee, but only to provide a broad cross check on the reasonableness of the fee arrived at by the percentage method." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 424 F. Supp. 3d at 498 (quoting *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d at 652). Because the lodestar has confirmed that the fee arrived at utilizing the percentage method is reasonable, Plaintiff asks this Court to approve the requested fee amount of $300,000.00, inclusive of fees and costs.

## C. COSTS/LITIGATION EXPENSES

"Typically, class action counsel who create a common fund for the benefit of the class . . . are entitled to reimbursement of reasonable litigation expenses from that fund." *Id.* at 504 (*citing In re Pool*

*Prod. Distribution Mkt. Antitrust Litig., MDL 2328*, 2015 WL 4528880, at *18 (E.D. La. July 27, 2015)). "The reimbursement of costs and expenses seeks not to reward attorneys for their work but restore the status quo." *Id.* However, the court must review the estimated expenses for which reimbursement is sought and determine whether the total requested sum is fair to the settlement class to ensure the requested expenses do not "cannibalize the entire . . . settlement." *Id.*

In addition to the reasonable and necessary attorneys' fees, addressed above, Collective/Class Counsel has incurred additional expense in the litigation of this matter. *See* Exhibit 1. To date, the expenses in this case total $4,987.30. *Id.* The $4,987.30 amount includes filing and service fees, *pro hac vice* admission fees, mediation fees and expenses, and PACER fees. These costs are detailed in the Declaration of Clif Alexander. *See id.* Importantly, Collective/Class Counsel does not seek to recover an **additional** amount for their costs and expenses beyond the 40% sought as attorneys' fees.

## IV.
## CONCLUSION

Plaintiff has submitted evidence in support of the attorneys' fees and costs requested herein, and have established that 40% of the common benefit fund is appropriate based on the percentage of the fund method.

Dated: December 21, 2022                    Respectfully submitted,

                                            ANDERSON ALEXANDER, PLLC

                          By:    /s/ Clif Alexander
                                 **Clif Alexander**
                                 Texas Bar No. 24064805
                                 clif@a2xlaw.com
                                 **Lauren E. Braddy**
                                 Texas Bar No. 24071993
                                 lauren@a2xlaw.com
                                 **Alan Clifton Gordon**
                                 Texas Bar No. 00793838
                                 cgordon@a2xlaw.com
                                 **Carter T. Hastings**
                                 Texas Bar No. 24101879
                                 carter@a2xlaw.com
                                 819 N. Upper Broadway
                                 Corpus Christi, Texas 78401
                                 Telephone: (361) 452-1279
                                 Facsimile: (361) 452-1284

                                 ***Attorneys for Plaintiff and the Putative Class
                                 Members***

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Defendant's counsel of record and they are not opposed to the filing of this Motion or the relief requested herein.

/s/ Clif Alexander
Clif Alexander

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2022, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Clif Alexander
Clif Alexander

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **VIRGINIA NAVARRO,** | § | **Civil Action No. 5:20-cv-00766-OLG** |
| **Individually and on behalf of all others** | § | |
| **similarly situated** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **COLLECTIVE ACTION** |
| | § | **PURSUANT TO 29 U.S.C. §216(b)** |
| | § | |
| **MARRIOTT INTERNATIONAL, INC.** | § | **CLASS ACTION** |
| | § | **PURSUANT TO FED. R. CIV. P. 23(b)(3)** |
| *Defendant.* | § | |

## DECLARATION OF CLIF ALEXANDER

I, Clif Alexander, being of sound mind and over the age of 18, make the following statements.

1. The facts contained in this declaration are within my personal knowledge and are true and correct.

2. I am a co-founding partner of Anderson Alexander, PLLC, and have served as lead Class Counsel for the Representative Plaintiff and the Class Members in this case.

3. I submit this declaration in support of the Plaintiff's Unopposed Motion for Final Approval of Confidential Settlement Agreement and Release (the "Approval Motion") and Plaintiff's Unopposed Motion for Attorneys' Fees and Costs ("Fee Motion"). I have reviewed the Approval Motion and the Fee Motion and the facts contained therein are true and correct, to the best of my knowledge.

4. Anderson Alexander, PLLC is a plaintiff and employee-side law firm that was founded in 2016 by me and my partner, Austin W. Anderson. Our firm practices almost exclusively in the area of labor and employment—specifically, in wage and hour law throughout the United States. We devote 95% of our practice to representing workers in class and collective actions under the Fair Labor Standards Act, 29 U.S.C. §§ 201–19, and various state wage laws. I, and the attorneys who performed services in this matter, have extensive experience litigating complex collective actions, like the matter pending before this Court. Since 2016, we have represented hundreds of thousands of employees in collective and class actions seeking unpaid wages for work performed throughout the United States.

5. I have spent my career litigating collective, class and mass action lawsuits and have been lead counsel in hundreds of individual, collective, and class action wage and hour cases across the United States. I have been licensed for fourteen (14) years and focus my practice on representing wage and hour clients throughout the United States.

6.    I received my J.D. from South Texas College of Law-Houston in 2008. I am licensed to practice law in the State of Texas and am admitted to practice before the U.S. Courts of Appeals for the Federal Circuit, and the Fourth, Fifth, and Eleventh Circuits. I am also admitted to practice in the following district courts: the Southern, Western, Eastern, and Northern Districts of Texas, the Court of Federal Claims, the District of Colorado, the Central District of Illinois, District of New Mexico, and the Eastern District of Michigan. I have litigated cases, either as an admitted attorney, or pro hac vice, in the federal district courts of Arizona, Utah, Washington, California, New Mexico, Colorado, Oklahoma, Iowa, Kansas, Kentucky, Missouri, Pennsylvania, Ohio, Illinois, Texas, Louisiana, Mississippi, Arkansas, Georgia, Alabama, Florida, Tennessee, South Carolina, Virginia, Wisconsin, Michigan, Vermont, and North Carolina.

7.    I am involved in many professional organizations and keep abreast of the ever-changing body of laws related to employment on a federal and state level. I am a member of the American Association for Justice ("AAJ"), National Employment Lawyers Association ("NELA"), the Texas Employment Lawyers Association ("TELA"), and the Texas Trial Lawyers Association ("TTLA"), and regularly attend and speak at their conferences. I am also very active in my local bar association and long served as a director and president for the Corpus Christi Young Lawyers Association and as a director for the Corpus Christi Bar Association. I also participate in multiple employment-specific listservs.

8.    My hourly rate in this case is $650.00, and that amount is commensurate with the amount reasonably charged by other legal practitioners of my skill and experience specializing in collective and class actions arising under the Fair Labor Standards Act ("FLSA") and related state wage and hour laws in this District.

9.    Austin W. Anderson, a co-founding member of Anderson Alexander, PLLC has also taken a lead role in the litigation of this matter. Mr. Anderson has also spent his career litigating class and mass action lawsuits and has been lead counsel in hundreds of individual, collective, and class action wage and hour cases across the United States. Mr. Anderson has been licensed for almost twenty (20) years and focuses his practice on representing wage and hour clients throughout the United States.

10.   Mr. Anderson received his J.D. from St. Mary's School of Law in 2003 and subsequently received his L.L.M. in trial advocacy from California Western in 2004. Mr. Anderson is licensed to practice law in the State of Texas and is admitted to practice before the U.S. Court of Appeals for the Fifth Circuit, the Southern, Eastern, Western, and Northern Districts of Texas, the Central District of Illinois, the District of New Mexico, and the Eastern District of Michigan. He has litigated cases, either as an admitted attorney, or pro hac vice, in the federal district courts of Arizona, Arkansas, California, Washington, New Mexico, Oklahoma, Iowa, Pennsylvania, Ohio, Kentucky, Illinois, Texas, Louisiana, Georgia, Alabama, Florida, South Carolina, Tennessee, North Carolina, Missouri, Utah, and Virginia.

11.   Mr. Anderson is involved in many professional organizations and keeps abreast of the ever-changing body of laws related to employment on a federal and state level. He is a member of the National Employment Lawyers Association ("NELA"), the Texas Employment Lawyers Association ("TELA") and the Texas Trial Lawyers Association ("TTLA") and regularly attends their conferences. Mr. Anderson is also active in the local bar associations and participates in multiple employment-specific listservs.

12.     Mr. Anderson's hourly rate in this case is $650.00, and that amount is commensurate with the amount reasonably charged by other legal practitioners of his skill and experience specializing in collective and class actions arising under the FLSA and related state wage and hour laws in the Western District of Texas.

13.     Lauren Braddy, a senior attorney with Anderson Alexander, PLLC, has also performed work on behalf of the Class Members in this matter. Ms. Braddy has been licensed for more than twelve (12) years and graduated with honors from Baylor University School of Law in 2010. Early in her career, Ms. Braddy served as defense counsel representing large and small corporations with a nation-wide docket in federal and state courts and subsequently worked as a staff attorney for the Thirteenth Court of Appeals in Corpus Christi, Texas. Ms. Braddy joined Anderson Alexander, PLLC in 2015 and since that time, has focused on in representing plaintiffs across the United States in complex representative actions, including class and collective alleging violations of federal and state laws. Ms. Braddy is admitted to practice before the Court of Appeals for the Fourth, Fifth, and Eleventh Circuits, the Southern, Western, Eastern, and Northern Districts of Texas, the Court of Federal Claims, the District of Colorado, the Central District of Illinois, the District of New Mexico, and the Eastern District of Michigan. Ms. Braddy has litigated cases, either as an admitted attorney, or pro hac vice, in the federal district courts of Arizona, California, New Mexico, Colorado, Oklahoma, Iowa, Pennsylvania, Ohio, Texas, Louisiana, Virginia, Utah, Georgia and Alabama. Ms. Braddy is involved in many professional organizations and is a member of the Trial Lawyers Association ("TTLA"), the National Employment Lawyers Association ("NELA"), the Texas Employment Lawyers Association ("TELA") and has been a speaker for multiple events, both at national conferences and locally within her community. Ms. Braddy is very active in her local bar associations and had long served as a director for the Corpus Christi Young Lawyers Association and is the current President for the Coastal Bend Women Lawyers Association. Ms. Braddy's typical hourly rate is $500.00 an hour, and that rate is reasonable for an attorney of her skill and experience in this specialized body of law in the Western District of Texas.

14.     Carter Hastings, an attorney with Anderson Alexander, PLLC, has also performed significant work on behalf of the Class Members in this matter. Mr. Hastings has represented thousands of workers in class, collective action, and individual lawsuits across the United States. Mr. Hastings graduated from Southern Methodist University's Dedman School of Law in 2016, and since returning to Corpus Christi, Texas, has become an active member in the local bar association, and served as President of the Corpus Christi Young Lawyers' Association last year. He is also a member of the National Employment Lawyers Association ("NELA"), the Texas Employment Lawyers Association ("TELA") and the Texas Trial Lawyers Association ("TTLA") and regularly attends their conferences. Mr. Hastings is licensed in Texas and is admitted to practice in all four federal districts in Texas and the Central District of Illinois. He has litigated cases, either as an admitted attorney, or pro hac vice, in the federal district courts of Illinois, Kansas, Kentucky, Louisiana, Missouri, Ohio, Oklahoma, Tennessee, and Texas. Mr. Hasting's hourly rate in this case is $450.00, and that amount is commensurate with the amount reasonably charged by other legal practitioners of his skill and experience specializing in collective and class actions arising under the FLSA and related state wage and hour laws in this District.

15.     Casey Kellum, an attorney with Anderson Alexander, PLLC, also worked on this case. Ms. Kellum began working with Anderson Alexander, PLLC as an associate attorney in 2022. Ms. Kellum's practice with Anderson Alexander, PLLC focuses exclusively on complex representative

actions where she diligently represents individuals in class and collective actions, in addition to individual lawsuits, across the United States. Ms. Kellum graduated from St. Mary's School of Law in 2020. She is a member of the Texas Employment Lawyers Association ("TELA"). Upon arriving in Corpus Christi, Ms. Kellum has become an active member in local bar associations, including the Corpus Christi Bar Association, Corpus Christi Young Lawyers Association, and the Coastal Bend Women Lawyers' Association. Her hourly rate is $350.00 which is reasonable for an attorney of her skill and experience in this specialized body of law in this District.

16.    The above attorneys with the law firms of Anderson Alexander, PLLC have represented hundreds of thousands of employees in collective and class action wage and hour litigation. As such, I can verify that I am familiar not only with this complex area of the law, but that I am also familiar with these specific claims in the industry, and specifically in this case.

17.    Anderson Alexander, PLLC has 266.2 billable hours invested in this case, for a lodestar of $134,310.00, as set forth in more detail in the chart below:

| Time Keeper | Hours | Rate | Amount |
|---|---|---|---|
| Clif Alexander | 57 | 650 $ | 37,050.00 |
| Austin Anderson | 21 | 650 $ | 13,650.00 |
| Lauren Braddy | 39 | 500 $ | 19,500.00 |
| Carter Hastings | 128 | 450 $ | 57,600.00 |
| Casey Kellum | 16 | 350 $ | 5,600.00 |
| Frances Lopez | 5.2 | 175 $ | 910.00 |
| | **266.2** | **$** | **134,310.00** |

18.    The above rates for have been approved by other district courts in complex hybrid wage and hour actions such as this one.[1]

19.    Collective/Class Counsel has invested significant time in this case.[2] At the outset, we performed our initial intake for the former named-plaintiff Rain Garcia (f/k/a Micheal Garcia), after which we engaged in substantial research both on her claims and on the business structure of her employer, Marriott International, Inc. Upon deciding to take the case, we promptly drafted and filed

---

[1] *See Mollett v. Kohl's Corporation*, No. 21-cv-707, ECF No. 27-3 (Declaration of Clif Alexander, addressing rates) and ECF No. 29 (civil judgment) (E.D. Wis.), attached together as Exhibit A; *Abner v. Convergys Corp.*, No. 1:18-cv-00442-DRC, ECF No. 278-3, ¶19 (Declaration of Clif Alexander, addressing rates) and ECF No. 279 (order approving settlement) (S.D. Ohio), attached together as Exhibit B.

[2] Collective Counsel will provide the detailed billing records for this matter for in camera review should the Court desire to review them.

---

Plaintiff's Original Complaint.[3] Because Defendant did not employ Garcia and Garcia was not therefore a proper class or collective representative, on April 4, 2022, Collective/Class Counsel requested and obtained Court-approval to file the First Amended Class/Collective Action Complaint ("Amended Complaint"). Through the Amended Complaint, Representative Plaintiff replaced Garcia as the named-plaintiff and Class Representative Upon filing this action in July of 2020, Collective/Class Counsel has engaged in extensive efforts in reaching a mutual resolution.

20.　　As part of those discussions, Defendant agreed to produce data relevant to the Putative Class Members, informally, to allow Class Counsel the opportunity to fully evaluate their claims and the available damages. The Parties attended a virtual formal mediation with respected wage and hour mediator, Carole Katz, on June 23, 2021. The Parties reached a settlement in principle, during the mediation and subsequently executed a Memorandum of Understanding ("MOU") further memorializing their agreement until the formal settlement agreement could be drafted and executed.

21.　　After extensive collaboration, and on March 15, 2022, the Parties fully executed the Agreement. Collective/Class Counsel also drafted all settlement related filings.

22.　　In addition to the tasks addressed above, Collective/Class Counsel will continue to devote attorney time and resources to the resolution of this matter. Specifically, we will take any further actions deemed necessary by the Court regarding the approval of the Settlement at issue. In the event this Court approves the Settlement, we will work expeditiously (along with the Defendant) to ensure the settlement payments are timely made according to the timeline included in the Settlement.

23.　　I represent that the Settlement reached herein was fair and reasonable, and I believe it constitutes an exceptional result considering the defenses at issue and the risk involved. The Representative Plaintiff and the Class Members are set to receive meaningful value for the release of their wage related claims. They will receive that monetary relief now, instead of some uncertain future date. Accordingly, the Settlement provides the Collective/Class Members with substantial relief, promptly and efficiently, and augments the benefits of that relief through the economies of collective resolution. Moreover, Representative Plaintiff promptly reviewed and executed the Settlement. She also reviewed the accompanying General Release and were pleased with the terms reached.

24.　　Further litigation through trial, and the potential for appeal, requires substantial risk—and additional time. In the event the Settlement is not approved, Collective/Class Counsel would proceed with drafting and filing their Motion for Class Certification to which Defendant will have to prepare a response, and the Parties must participate in formal discovery. The Parties will litigate the issue of whether collective treatment is appropriate before advancing to further discovery. This discovery would encompass written discovery, depositions, and potentially third-party discovery. Both Parties would likely file their dispositive motions after the close of discovery. The resolution of these issues will require dozens of motions, which will prolong the time before any Class Member might obtain relief (if they are entitled to any relief at all).

---

[3] We also prepared a motion for conditional certification and notice to the putative class members with all supporting declaratory evidence. However, because the Parties agreed to work to informally resolve this litigation, Plaintiff was not forced to file the opposed motion.

25.     In choosing to accept representation and engage in the litigation of this matter, Collective/Class Counsel was unable to accept other promising cases.  As a small law firm with limited resources, we are unable to accept every viable case.

26.     The attorney-client contract between Anderson Alexander, PLLC and Representative Plaintiff, provided for representation on a contingent fee basis. Anderson Alexander, PLLC agreed to cover all case expenses and litigation costs (up to and including being responsible for Defendant's statutory court costs in the event it prevailed on the merits). The Agreement provides that the firm is entitled to a 40% contingency fee of the gross settlement amount, in addition to reimbursement of litigation costs and expenses actually incurred.

27.     To date, Class Counsel has incurred litigation costs of $4,987.30. A detailed summary of those costs is included below:

### Case Expense Report
5:20-cv-00766-OLG-; *Navarro v. Marriott International,Inc.*

| Description | Amount |
| --- | --- |
| Filing Fee | $400.00 |
| Service of Process on Marriott International | $77.77 |
| Westlaw | $875.00 |
| Pacer | $133.00 |
| Adobe E-Sign | $96.22 |
| Adobe Acrobat Pro | $194.76 |
| Docketbird | $75.00 |
| Mediation Fee | $3,000.00 |
| Postage | $135.55 |
| | $4,987.30 |

28.     Although the attorney-client contract between Collective/Class Counsel and Representative Plaintiff Navarro entitles Collective/Class Counsel to recover their out-of-pocket expenses in *addition* to 40% of the Gross Settlement Amount, Collective/Class Counsel is not seeking to recover their expenses separately.

29.     Based on the foregoing, the undersigned declarant respectfully requests that this Court approve the Settlement between the parties and authorize the manner and method of the distribution of the settlement, as discussed therein.

30.     I declare under the penalty of perjury that the foregoing information is true and correct.

Executed on: Dec 21, 2022 _____

Signed by: _Clif Alexander_____
Clif Alexander (Dec 21, 2022 22:22 CST)

Clif Alexander

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

JASON BASS, ET AL.                              CIVIL ACTION NO. 17-0947

versus                                          JUDGE SUMMERHAYS

BERRY BROS. GENERAL                             MAGISTRATE WHITEHURST
CONTRACTORS, INC.

## REPORT AND RECOMMENDATION

The parties reached a settlement in this case which has been conditionally certified a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*.   As a result, counsel filed a Joint Motion for Settlement Agreement Approval and Dismissal with Prejudice [Doc. 30], and separately filed a sealed copy of the Confidential Settlement and Release Agreement [Doc. 34] for review and approval of the settlement in camera.   Plaintiffs also filed an Unopposed Motion for Award of Attorney's Fees and Costs [Doc. 37][1].   Based on a review of the motions, the Confidential Settlement, the applicable law and jurisprudence and, for the following reasons, it is recommended that the Joint Motion for Approval of Confidential Settlement Agreement and Release [Doc. 30] and the Unopposed Motion for Award of Attorney's Fees and Costs [Doc. 37] be

---

[1]  Plaintiffs motion was filed in accordance with this Court's March 24, 2020 order requiring the parties to submit documentation supporting the amount of attorney's fees awarded in the proposed settlement, so that the Court could properly address the Joint Motion for Settlement Approval and Dismissal.

GRANTED.

**LAW AND ANALYSIS**

Because this case has been conditionally certified as a collective action under the FLSA, this Court must approve the settlement before it may be finalized. *See  Brooklyn Sav. Bank v. Oneil*, 324 U.S. 697 (1945).  Before the Court may approve a settlement in a collective action brought under the FLSA, it must first determine whether the settlement involves the resolution of a bona fide dispute over an FLSA provision and then decide whether the settlement is fair and reasonable.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982); *Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 719 (E.D. La. 2008).

The instant action presents a bona fide dispute over FLSA provisions, including whether the plaintiffs were properly classified as independent contractors, whether the plaintiffs were properly paid on an hourly basis or whether they were misclassified and entitled to overtime pay, whether the defendant's alleged violations were made in good faith and on reasonable grounds and whether the defendant's alleged FLSA violations were willful. The case has been litigated for almost two years.

In determining whether a settlement is fair, adequate and reasonable, the Court should consider the following six factors: (1) the existence of fraud or

2

collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.   *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), *citing Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982).   As part of the fairness determination, the Court must also assess the reasonableness of any proposed award of attorney's fees and expenses sought by plaintiff's counsel. *Strong v. BellSouth*, 137 F.3d 844, 849-850 (5th Cir. 1998).

The parties have agreed to individual settlement amounts for the plaintiffs as set forth in Exhibit B to the Agreement.[2]   There is no evidence of any fraud or collusion behind the settlement. The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary. *Camp v. Progressive Corp.*, 2004 WL 2149079 at *7 (E.D. La. 2004), *citing Newberg on Class Actions* §11.51 (4th ed.).   Since this case was filed in 2017, counsel for the parties have vigorously represented and advanced the position of their clients, engaging in discovery, and competently addressing the issues presented in this litigation. It is clear that the settlement has been arrived at by arms-length and good faith negotiations. The first factor favors approval of the settlement as fair,

---

[2]   Doc. 34 (UNDER SEAL).

3

adequate, and reasonable.

With regard to the inquiries set forth in the second factor, the complexity, expense, and likely duration of the litigation, this FLSA action presented multiple complex legal issues which have been zealously litigated by experienced counsel. Had a settlement not been consummated, the Court is of the opinion that this case would likely have remained in litigation for a significant amount of time, in excess of at least one or two more years, including any appeal of any adverse judgment, causing the parties to have incurred significant additional expense. Accordingly, the second factor weighs in favor of finding that the settlement is fair, adequate and reasonable.

The third factor, the stage of the proceedings and the amount of discovery completed, likewise supports a finding that the settlement is fair, adequate and reasonable, and accordingly, should be approved. This case has been pending for almost three years. During its pendency, the parties have conducted significant discovery and factual and legal investigations. While it is clear that the Plaintiffs did not receive overtime pay–the number of hours worked in a given workweek was contested, as was Plaintiffs' status as independent contractors and their eligibility for overtime pay. Thus, discovery taken by the Plaintiffs highlights that there remain contested questions of fact on the issue of liability and damages.

The fourth factor, probability of plaintiff's success on the merits, supports a

finding that the settlement is fair, adequate, and reasonable. This case has been litigated by competent lawyers on each side who enjoy great respect in their field from both sides of the aisle. Counsel for Plaintiffs has appeared multiple times in this Court and has a history of success in large-scale wage and hour litigation. Counsel for the Defendant is also well known to this Court and the legal community as a skilled litigator, particularly in employment-based matters. In light thereof, and given the nature of the disputed issues underlying this lawsuit, there is uncertainty surrounding the eventual outcome of the litigation, as well as the potential for appeal to the Fifth Circuit, such that the fourth factor weighs in favor of finding that the settlement of this action is fair, adequate, and reasonable.

The fifth factor, the range of possible recovery, weighs in favor of a finding that the settlement is fair, adequate, and reasonable. There are not records in this case to clearly and accurately indicate the number of hours worked by the Plaintiffs and the Defendants contest that Plaintiffs work the hours claimed.   Indeed, Defendants contend that Plaintiffs are not entitled to any damages.   As a result of the settlement, each eligible class member will receive a sum representing a percentage of back pay due for overtime violations, plus an equal amount as liquidated damages and interest. The Court therefore finds that the total amount offered to each eligible plaintiff represents a settlement that curtails risk while resolving this dispute for an amount that is adequate, fair, and reasonable and

within range anticipated by the Court.

The final factor, the opinions of the class counsel, class representatives, and absent class members, also mandates a finding that the settlement is fair, adequate and reasonable. Class counsel and the class representative, as well as the defendant and its counsel, have approved the terms of the Settlement Agreement and have joined in asking this Court for approval. There have been no objections to the settlement whatsoever and all agree that the proposed settlement is in the best interests of the parties involved. The settlement was arrived at after intense settlement negotiations by counsel. The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).   The Court finds no evidence that plaintiffs' counsel has not worked in good faith to secure a good and fair settlement.

As part of the fairness determination, the Court must also assess the reason-ableness of any proposed award of attorney's fees and expenses sought by plaintiff's counsel.   *Strong v. BellSouth*, 137 F.3d 844, 849-850 (5th Cir. 1998). Plaintiffs' counsel seeks approval of an award of roughly 40% of the gross amount of the settlement, which includes $1,626.00 in costs and expenses. For the reasons that follow, Court approval for payment by the defendant of these amounts to the plaintiffs' counsel should be granted.

The Fifth Circuit generally uses the lodestar method for determining reasonable attorney's fees in class actions and FLSA actions.   *Strong*, 137 F.3d at 850.   A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work.   *Id.* After making this calculation, the district court may decrease or enhance the lodestar based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[3]   The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar award already took that factor into account.     Such reconsideration is impermissible double-counting.   *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).   Further, "[t]he lodestar ... is presumptively reasonable and

---

[3]  The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Johnson*, 488 F.2d at 717-19.

"[O]f the Johnson factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel."  *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citation omitted). Three of the Johnson factors, complexity of the issues, the results obtained, and preclusion of other employment, are fully reflected and subsumed in the lodestar amount. *Heidtman*, 171 F.3d at 1043, *quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), and *Shipes*, 987 F.2d at 319-22 & n. 9. After *Johnson* was decided, the "Supreme Court has barred any use of the sixth factor," whether the fee is fixed or contingent.  *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996), *citing City of Burlington*, 505 U.S. at 567, and *Shipes*, 987 F.2d at 323.

should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

In this case, all parties have agreed plaintiffs' counsel is entitled to a total of 40% of the gross settlement amount for attorney's fees. The parties have submitted documentation as to the total hours of attorney work performed by plaintiffs' counsel, counsels' customary rate of pay, and the expenses incurred by the plaintiffs in this litigation. The record shows that class counsels' attorneys' fee is based on 70.4 attorney and staff hours, delivered over the course of litigating this case, and is supported by fair and reasonable rates and hours.  Class counsels' rates for work are $125-500 per hour.   Class counsel's rates are consistent with the rates charged by both plaintiff and defense attorneys who practice in this district and in the Fifth Circuit.   The number of hours class counsel worked was reasonable, given the novelty and complexity of the litigation.   After a review of all of the lodestar factors, the Court finds that the agreed-upon award of attorney's fees and the proposed award in this case is fair and reasonable.   As previously noted, a significant amount of time and effort has been expended in the nearly three years this case has been pending.   Class counsel's skill, knowledge, reputation, and experience is well-recognized in FLSA cases such as this.   For all of the foregoing reasons, the Court finds that the proposed attorneys' fee award in this case is fair and reasonable.

## **CONCLUSION**

Considering the foregoing, it is recommended that the Joint Motion for Approval of Confidential Settlement Agreement and Release [Doc. 30] and the Unopposed Motion for Award of Attorney's Fees and Costs [Doc. 37] be GRANTED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th  Cir.1996).

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 1st day of April 2020.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**